WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael P. Clarken, | No. CV-12-00907-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Penny Pritzker[1], Secretary of Department of Commerce, | |
| Defendant. | |

The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

Pending before the Court is Defendant's Motion for Summary Judgment ("MSJ") (Doc. 36). Upon consideration of Defendant's MSJ, Plaintiff's Response to Defendant's MSJ ("Response.") (Doc. 44), Defendant's Reply in support of MSJ ("Reply") (Doc. 46), and oral argument, the Court grants Defendant's Motion for Summary Judgment as set forth below.

**I.      Background**

Plaintiff, Michael Clarken, initiated this action on December 12, 2012. Complaint, (Doc. 1). On August 19, 2013, Mr. Clarken filed a Second Amended Complaint asserting that he was denied re-employment with Defendant Agency's Tucson Telephone Center

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Penny Pritzker, sworn in as United States Secretary of Commerce on June 26, 2013, is substituted as the defendant in Social Security actions.

1  ("TTC") in an attempt to conceal Defendant's failure to provide reasonable
2  accommodation for Plaintiff's disability and a hostile work environment characterized by
3  "excessive speed-ups that had an adverse and disparate impact on the production numbers
4  of both the disabled as well as the elderly" and that he was "unlawfully retaliated against
5  for complaining about these intolerable work conditions to his union representative."
6  Second Amended Complaint, (Doc. 18). Mr. Clarken seeks back wages for the three
7  years after his last application for re-employment at the TTC was denied. *Id.*

8  Defendant moves for summary judgment, arguing that Mr. Clarken failed to
9  exhaust administrative remedies with regard to his claims of age discrimination, that his
10 discrimination claim is meritless because Plaintiff cannot demonstrate that the Agency
11 failed to rehire him under circumstances that give rise to an inference of disability
12 discrimination, and cannot demonstrate a causal connection between his 2005
13 administrative complaint, and his 2007 non-selection for re-employment. Defendant
14 further argues that even if Plaintiff could establish a prima facie claim of discrimination
15 or retaliation, the Agency has articulated legitimate, non-discriminatory reasons for
16 Plaintiff's non-selection, and Plaintiff cannot demonstrate pretext.

17 **II.    Motion for Summary Judgment Standard**

18 Summary judgment is appropriate when there is no genuine issue as to any
19 material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P.
20 6(a). The party seeking summary judgment "bears the initial responsibility of informing
21 the district court of the basis for its motion, and identifying those portions of [the
22 record]...which it believes demonstrate the absence of a genuine issue of material fact."
23 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citation
24 omitted). Once satisfied, the burden shifts to the nonmoving party to demonstrate through
25 production of probative evidence that an issue of fact remains to be tried. *Id.* at 324. At
26 the summary judgment stage, the court must not weigh evidence or make credibility
27 determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The
28 nonmoving party's evidence is presumed true and all inferences are to be drawn in the

light most favorable to that party. *Eisenberg v. Insurance Co. of North Amer.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Only disputes over facts that might affect the outcome of the suit will prevent the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Thus, if the record taken as a whole "could not lead a rational trier of fact to find for the nonmoving party," summary judgment is warranted. *Miller v. Glenn Miller Production., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden of production under Rule 56 by producing, "evidence negating an essential element of the nonmoving party's claim or defense…," or by showing, after suitable discovery, that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105-1106 (9th Cir. 2000).

**III.    Evidentiary Objections**

Plaintiff disputes only the Defendant's characterization of an e-mail, dated July 9, 2004, found at Defendant's Statement of Facts ("DSOF") ¶ 2, Ex. 2. *See* PSOF, ¶ 2. The Court resolves this objection in the body of the Order to the extent the disputed evidence has bearing on the motion before it.

Plaintiff objects to the admissibility of Paragraphs 13 through 16 of Defendant's Statement of Facts as overly compound in violation of LRCiv. 56.1. Plaintiff does not dispute the substantive facts in these paragraphs, and has submitted no additional statement of facts, pursuant to LRCiv 56.1(b)(2).[2] Objections to evidence must state the specific ground on which the objection rests as to each particular item of evidence. The

---

[2] Plaintiff submits Exhibits A – G attached to his Response, and Exhibits A – B, attached to his controverting statement of facts ("PSOF") (Doc. 45), which the Court, construing the *pro se* Plaintiff's documents liberally, will consider in support of Plaintiff's opposition.

- 3 -

1 Court cannot consider blanket objections without analysis applied to each specific item of
2 plaintiff's evidence to which defendants purport to object. *See, e.g., Stonefire Grill, Inc. v.*
3 *FGF Brands, Inc.*, 987 F.Supp.2d 1023, 1033 (C.D.Cal.2013) ("the Court will not
4 scrutinize each objection and give a full analysis of identical objections raised as to each
5 fact").

6 Plaintiff also objects to Defendant's Statement of Facts, Paragraphs 1, 3 through
7 13, and 17 through 26, for providing only background material in non-compliance with
8 this Court's Local Rules prohibiting inclusion of facts in a factual statement that are not
9 necessary to decide the motion. *See* LRCiv 56.1(a). The Court, recognizing the
10 preference for resolving cases on the merits and further finding that the Defendant's
11 Statement of Facts are material to the Court's resolution of this motion, declines
12 Plaintiff's suggestion to deny the motion on these grounds. To the extent Plaintiff's
13 objection is construed as a relevancy objection, the Court does not address each objection
14 but, because the Court may rely only on relevant evidence in addressing the motion for
15 summary judgment, the Court's citation to evidence subject to a relevance objection
16 means the objection has been overruled. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.
17 242, 248 (1986). ("As to materiality, the substantive law will identify which facts are
18 material. . . . Factual disputes that are irrelevant or unnecessary will not be counted.").

19 **IV.    Summary of Material Facts**

20 The Court finds the following material facts to be undisputed except where
21 otherwise noted.

22 A.    Plaintiff's Employment with the Tucson Call Center, April to July 2004

23 The U.S. Department of Commerce is part of the Executive Branch of the Federal
24 government and is made up of a number of bureaus and activities, one of which is the
25 U.S. Census Bureau. *See,* 13 U.S.C. §2. In addition to the constitutionally mandated
26 decennial census, *see* U.S. Const. Art. 1 § 2, the Agency conducts periodic, continuing
27 surveys, often sponsored by other government agencies and entities. A large number of
28 the surveys conducted by the Census Bureau are conducted by employees of the National

- 4 -

Processing Center ("NPC").[3] NPC is headquartered in Jeffersonville, Indiana, and also has a telephone call center located in Tucson, Arizona.[4] The Tucson Contact Center employs telephone interviewers who are responsible for conducting surveys via telephone, answering respondents' questions, handling both incoming and outgoing calls, assisting in completion of surveys over the phone, resending paper surveys, assisting in non-English survey completion, and offering phone questionnaire assistance on surveys.[5]

Mr. Clarken worked for the Agency as a Telephone Interviewer at TTC on a temporary appointment from April 12, 2004 to July 10, 2004. DSOF ¶ 1. During his tenure at the TTC, Plaintiff used inappropriate language and disrupted a training session. DSOF ¶ 14. He was told that his behavior was not appropriate. The quality and quantity of his interviewing skills also did not advance to an acceptable level despite ongoing counseling and instruction. *Id.* He used words such as "superfluous" and "ridiculous" when surveying respondents, which were not part of the script he was instructed to follow and was not professional conduct. *Id.* Plaintiff was not receptive to any criticism of his performance. DSOF ¶ 15. Additionally, he exchanged angry words regarding the connection of computer cables under his workstation with the TTC Information Technology technician. *Id.*

In July, 2004, Debra Mouser, Supervisory Operations Specialist, informed Mr. Clarken that his temporary assignment was being expired, and explained that he was eligible to be hired back at the TTC or other federal agencies because he was not being terminated for poor performance. *See* DSOF, Ex. 2 (filed under seal), and PSOF, Ex. A. Plaintiff disputes Defendant's contention that Ms. Mouser explained that his term was

---

[3] *See* United States Census Bureau, National Processing Center (NPC), http://www.census.gov/npc/ (last visited April 7, 2015).

[4] *See id.*, http://www.census.gov/npc/contactus.html (last visited April 7, 2015).

[5] *See id.*, http://www.census.gov/npc/telephone_centers.html (last visited April 7, 2015).

being expired because of the quantity and quality of his interviewing work. *See* PSOF, ¶ 2. The e-mail of July 9, 2004, documenting Ms. Mouser's meeting with Mr. Clarken, states:

> Mr. Clarken was concerned about being terminated because of his statistics. I corrected him and told him that he was only being expired that he would still be eligible for other work either here or at other Federal agencies. I informed him that if we were to terminate him for poor performance that would make him ineligible to be hired back here or at other Federal agencies and that is not the case here.

DSOF, Ex. 2; PSOF, Ex. A. Ms. Mouser also documented that while Mr. Clarken showed improvement in his performance, he was "still significantly below the facility minimum average of 70%" and that they also "looked at the quality of interviewing as in his monitoring sessions that it was not just based on one statistic." *Id*. While Ms. Mouser's e-mail suggests that Mr. Clarken's quantity of work was below average and the decision to expire his term was also based on the quality of his work, it does not clearly state that Ms. Mouser explained to Mr. Clarken that his term was being expired because of the quantity and quality of his interviewing work. The memorandum does clearly detail that Ms. Mouser explained that Mr. Clarken's term was expired, that he was not being terminated, and the significance of that action in terms of his eligibility for rehire. *See id*.

Subsequently, Evelyn Chandler, serving as Chief, TTC, at all times relevant to this complaint, and Mr. Clarken's third-level supervisor, explained in a declaration that when Mr. Clarken was evaluated to determine if the Agency would extend his appointment, Mr. Clarken's temporary appointment was allowed to expire because his quality and production were "below an acceptable level of 3." DSOF Ex. 6, at Report of Investigation ("ROI"), p. 116.

B.    Plaintiff's First Administrative Complaint, April 2005

On April 27, 2005, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was not rehired by the Agency within six months of the expiration of his term appointment on July 10, 2004, as promised, because of his age (DOB: 12/2/1943) and

- 6 -

disability (hearing disability). DSOF ¶ 3. Plaintiff initially requested a hearing, but withdrew the request. As a result, the Administrative Judge cancelled the hearing on September 5, 2006, and remanded the case to the Agency for issuance of a Final Agency Decision ("FAD"). DSOF ¶ 4. On September 20, 2006, the Agency issued a decision finding that Plaintiff was not subjected to discrimination. DSOF ¶ 5. Plaintiff appealed the FAD, and the EEOC affirmed the Agency's decision on July 10, 2008, finding that the Agency's objections to Plaintiff based on his past conduct and performance were legitimate, nondiscriminatory reasons for its actions. DSOF ¶ 6. The EEOC denied reconsideration on September 10, 2008. DSOF ¶ 7.

   C. Plaintiff's Application for Re-Employment with TTC, January 2007

On January 11, 2007, the Agency issued a Vacancy Announcement for the position of Telephone Interviewer, at the U.S. Census Bureau, NPC, TTC, in Tucson, Arizona. DSOF ¶ 8. Eighty-seven applicants were initially considered eligible for the position based on their applications, their performance on a written test, and their performance at an interview. DSOF ¶ 9. These applicants were ranked and placed on the Eligibility Register Report (certificate of eligibles) by Human Resources. DSOF ¶ 10. Plaintiff ranked first on this Report. *Id.*

Ms. Chandler was the Chief at TTC at the time that the Agency advertised under the Vacancy Announcement at issue. DSOF ¶ 11. She did not test or interview the applicants. *Id.* Ms. Chandler did review the Eligibility Register Report to make determinations regarding selection, and made the final hiring determinations. DSOF ¶ 12. Ms. Chandler did not select Plaintiff because she determined that he was not suitable for telephone interviewing work based on his conduct and work performance during his previous tenure (in 2004) with the Agency. DSOF ¶ 13. In memoranda dated March 28, 2007 and April 3, 2007, Ms. Chandler explained her objection to the hiring of Mr. Clarken and requested a passover of the preference eligible Mr. Clarken. *Id.* Ms. Chandler wrote:

  [D]uring Mr. Clarken's training, Trainer/Supervisor Marisa Monreal stated

> that he had been disruptive in class by not paying attention and making rude comments. She stated that she had to stop class on several occasions in an effort to stop this behavior. Two females in the class complained to Ms. Monreal that Mr. Clarken had called one of them a jerk on two separate occasions during the training. One of the females was so upset she told Ms. Monreal that she considered leaving.
>
> . . .
>
> At the time of his expiration Mr. Clarken was still on initial monitoring. To move to a systematic status, an interviewer must have 3 fully successful monitoring sessions in a row. He had 5 monitoring sessions in a ro[w] that fell below fully successful. He would not read screens as worded, would modify the question to his liking, or completely skip over the question all together. He would tell the respondents that the questions were ridiculous or that they might seem superfluous. He was given feedback on numerous occasions explaining to him the proper way to perform his job. He was not receptive to any type of criticism on his performance and would not make the adjustments necessary to perform his duties in an acceptable manner. On July 2nd, 2004, while Mr. Clarken was on an interview, he began having problems navigating thru the survey instrument, and began to swear ( darn-it, this is ridiculous) and so on. Martha Campos (Operations Specialist) immediately rushed to the production floor but by the time she reached his work station, the respondent had hung up. Mr. Clarken was extremely agitated. We have specific guidelines from our sponsors on how to conduct a telephone interview but Mr. Clarken simply didn't want to follow them. We also have strict guidelines on how a Census Bureau employee should behave, Mr. Clarken seemed to have a problem with females in supervisory positions and he didn't want anyone, especially a female, to give him any instructions. At the time he left, I had several female supervisors who were fearful of how easily agitated he would become. This was not a good situation.
>
> At the time of his expiration Mr. Clarken's production statistics were 65% of the facility average which falls below an acceptable range.
>
> Based on our first hand experience with Mr. Clarken, and the fact that the duties and responsibilities of the telephone interviewer position have not changed since he was here before, we don't feel he would be a good fit for the job.

DSOF Ex. 7, Memorandum dated April 3, 2007, EEOC ROI 034.

> Plaintiff disputed some of the details of the facts stated in Ms. Chandler's memo

1  (*e.g.*, "I <u>asked</u> that <u>one</u> (not <u>two</u>) of my fellow trainees … 'stop acting like a jerk' …
2  [and] suggested to Ms. Monreal in what in retrospect may have been a misguided attempt
3  at irony) that, if "jerk" was too strong a word, perhaps I should have used "a-hole"
4  instead – not "asshole" as one of Agency's own witnesses verified"), DSOF Ex. 3, OFO
5  Appeal at 210, but did not dispute the central facts that formed the basis of Ms.
6  Chandler's objection to Plaintiff and her final hiring decision, DSOF ¶ 16. Plaintiff
7  attempted to justify his actions in the context in which it occurred, *e.g.*, telling someone
8  to stop acting like a jerk "is not exactly the same thing as calling her a jerk." DSOF ¶ 16.

### D. Plaintiff's Second Administrative Complaint, October 2007

On October 3, 2007, Plaintiff filed a formal complaint of discrimination with the Agency alleging that his non-selection for the Telephone Interviewer position was the result of disability discrimination and retaliation for his prior EEO activity. DSOF ¶ 17. On July 9, 2009, the Agency moved for decision without a hearing (summary judgment) based on Plaintiff's inability to establish a prima facie case of disability discrimination or retaliation, and his inability to show that the Agency's legitimate, nondiscriminatory reasons for his nonselection (his previous misconduct at the Agency) was a pretext for unlawful discrimination. DSOF ¶ 21. On September 27, 2010, the Administrative Judge issued an Order Entering Judgment in favor of the Agency. DSOF ¶ 22. Specifically, the Administrative Judge found that the Agency was entitled to summary judgment, even if Plaintiff could establish a prima facie showing of disability discrimination or retaliation because he had no evidence to show pretext in the Agency's legitimate, nondiscriminatory reasons for his non-selection. *Id.* On October 11, 2010, the Agency's Office of Civil Rights issued a Final Agency Decision (FAD), adopting the Administrative Judge's decision and dismissing Plaintiff's complaint. Plaintiff was informed of his right to file an appeal with the EEOC or to file civil action. DSOF ¶ 23.

On November 12, 2010, Plaintiff appealed the Agency's FAD to the EEOC. DSOF ¶ 24. On September 7, 2012, the EEOC issued a Decision affirming the Agency's FAD, and finding that the Administrative Judge appropriately granted summary judgment to the

Agency. DSOF ¶ 26. Specifically, the EEOC found substantial evidence to support the Agency's legitimate, nondiscriminatory reasons for not rehiring Plaintiff—his misconduct during his prior appointment—and that Plaintiff had failed to provide any evidence to rebut these reasons or demonstrate that discrimination was the Agency's ultimate reason for not selecting him. *Id.* Plaintiff was notified of his right to either request reconsideration from OFO or file a civil complaint in the appropriate U.S. District Court. DSOF ¶ 27. On December 12, 2012, Plaintiff initiated this action.

**VI.    Age Discrimination Claim**

The Ninth Circuit has held that the Age Discrimination in Employment Act ("ADEA"), "is the exclusive remedy for age discrimination claims by federal government employees." *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1057 n.5 (9th Cir. 2009); 29 U.S.C. § 633a. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"Under the ADEA, an employee has two alternative options for seeking judicial redress." *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). First, "an employee [can] invoke[ ] the EEOC's administrative claims process, and then may appeal any loss therein to the federal court." *Id.* (citing 29 U.S.C. § 633a(b), (c)). Alternatively, "[w]hen the individual has not filed a complaint ... with the Commission," 29 U.S.C. § 633a(d), he may give notice of the discriminatory action to the EEOC within 180 days of that action, and then give notice of his intent to sue at least thirty days before commencing suit. *Whitman*, 541 F.3d at 932 (citing 29 U.S.C. § 633a(c), (d)); *see also Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) ("An employee seeking remedies under the ADEA may either pursue a direct action in federal court after notifying the EEOC, or may pursue administrative remedies by filing a complaint with the EEOC and then seek review in district court if he is not satisfied with the result.").

Plaintiff alleges in his Second Amended Complaint that he was denied re-

- 10 -

employment at the TTC, in part because of the "systemic implementation of a hostile work environment characterized, inter alia, by excessive speed-ups that had an adverse and disparate impact on the production numbers of … the elderly."

Plaintiff's formal EEO complaint did not include an age discrimination claim, *see* DSOF ¶ 17, Ex. 8, at ROI 020, and both the Administrative Judge's decision and OFO's decision on appeal, addressed only claims of disability discrimination and retaliation. See DSOF Ex. 13, at OFO APPEAL 267; and Ex. 14. at 1. Although the regulatory pre-filing exhaustion requirement at § 1614.105 "does not carry the full weight of statutory authority" and is not a jurisdictional prerequisite for suit in federal court, absent waiver, estoppel, or equitable tolling, "failure to comply with this regulation [is] ... fatal to a federal employee's discrimination claim" in federal court. *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir.2009) (alterations in the original) (quoting *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir.2002)). Plaintiff does not submit any evidence that would excuse his failure to comply with the exhaustion requirement, nor does Plaintiff submit any evidence that would suggest that he complied with the direct approach of 29 U.S.C. § 633a(d) by filing a civil action in a United States district court under the ADEA after giving the EEOC not less than thirty days' notice of intent to sue on this claim. Accordingly, the Court dismisses Plaintiff's ADEA claim for failure to exhaust administrative remedies.

**VII.  Disability Discrimination Claim**

Plaintiff seeks damages alleging discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA"). Second Amended Complaint, p. 2. The ADA explicitly exempts the federal government from coverage. Section 12111(5)(B)(i) specifies that the term "employer" as used in the ADA does not include "the United States government." 42 U.S.C. § 12111(5)(B)(i). "Based on this exclusion, federal courts have concluded that the ADA provides no remedy to federal employees." *Daniels v. Chertoff*, 2007 WL 1140401, * 2 (D.Ariz. 2007) (citing *Calero–Cerezo*, 355 F.3d at 11, n. 1 (stating that the opinion would concentrate on the Rehabilitation Act,

1 "since the ADA is not available to federal employees"); *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) (stating that "the entire federal government is excluded from the coverage of the ADA"); *Rivera v. Heyman*, 157 F.3d 101, 103 (2nd Cir.1998) (stating that, as a federal employee, plaintiff "has no remedy for employment discrimination under the ADA"). *Also see, Enica v. Principi*, 544 F.3d 328, 338 n. 11 (1st Cir. 2008) ("As a federal employee, [plaintiff] is covered under the Rehabilitation Act and not the ADA.").

Accordingly, the Court will treat Plaintiff's disability discrimination claim as a claim arising under the Rehabilitation Act, which prohibits federal agencies from discriminating against disabled persons in employment matters, such as hiring, placement, or advancement, and provides the exclusive remedy for federal employees to assert claims of handicap discrimination. 29 U.S.C. §§ 701 *et seq.*; *Henson v. Air Nat. Guard Air Force Reserve Command Test Center*, 2007 WL 2903993, * 7 (D.Ariz. 2007) (citing *Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). The Rehabilitation Act incorporates the standards for determining discrimination applied under the Americans with Disabilities Act. *See* 29 U.S.C. § 791(g); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002).

The burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to claims of discrimination on account of a disability. *See Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003) (applying *McDonnell Douglas* burden shifting framework to ADA disability discrimination claim). Under this burden-shifting scheme, Plaintiff must first set forth a prima facie disability discrimination claim under the Rehabilitation Act. *McDonnell Douglas*, 411 U.S. at 802. To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) he is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of his disability. *Walton v. U.S. Marshals Serv.,* 492 F.3d 998, 1005 (9th Cir. 2007) (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005)).

To demonstrate pretext, the complainant must show that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Warren v. City of Carlsbad*, 58 F. 3d 439 (9th Cir. 1984). To do the latter, complainant must show that the employer's reasons have no basis in fact.

Defendant does not contest that Plaintiff is a person with a disability, or that he was qualified for the job. Defendant does argue that Plaintiff's discrimination claim is meritless because Plaintiff cannot demonstrate that the Agency failed to rehire him under circumstances that give rise to an inference of disability discrimination, and that even if Plaintiff could establish a prima facie claim of discrimination the Agency has articulated legitimate, non-discriminatory reasons for Plaintiff's non-selection, and Plaintiff cannot demonstrate pretext.

Plaintiff cannot demonstrate that the Agency failed to rehire him under circumstances that give rise to an inference of disability discrimination. *Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1156-57 (9th Cir.2000) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996)). To do so, Plaintiff would need to present some affirmative evidence that his disability was a determining factor in the Agency's decision. Here, the undisputed evidence demonstrates that Ms. Chandler did not select Plaintiff because she determined that he was not suitable for telephone interviewing work based on his conduct and work performance during his previous tenure (in 2004) with the Agency. DSOF ¶ 13. Even if Plaintiff could establish a prima facie claim of discrimination, the Agency has articulated legitimate, non-discriminatory reasons for Plaintiffs nonselection, and Plaintiff has not presented any sufficiently probative evidence that the Agency's explanation is false. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Because Plaintiff cannot meet his ultimate burden under the *McDonnell Douglas* analysis, he cannot prevail. *See McDonnell Douglas,* 411 U.S. 792.

**VIII. Retaliation Claim**

Plaintiff also alleges "unlawful retaliation for prior complaints related to violations

of [the ADEA and the ADA]." Second Amended Complaint, p. 2. Plaintiff asserts in his complaint that the Agency unlawfully retaliated against him for complaining about intolerable work conditions to his union representative.

Although the Rehabilitation Act, 29 U.S.C. § 791, does not contain its own anti-retaliation provision, it expressly incorporates the anti-retaliation provision found in Title I of the ADA, which appears at 42 U.S.C. § 12203. *See* 29 U.S.C. § 791(g); *see also McCoy v. Department of Army*, 789 F.Supp.2d 1221, 1234 (E.D. Cal. 2011). Similar to a Title VII retaliation claim, a prima facie case of retaliation under the Rehabilitation Act "requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (citation and quotation marks omitted). A plaintiff may attempt to prove his or her retaliation claim under the same burden-shifting framework as a Title VII retaliation claim. *See id.*

Defendant argues that Plaintiff's retaliation claim is meritless because Plaintiff cannot demonstrate a causal connection between his 2005 administrative complaint, and his 2007 non-selection for re-employment. Defendant further argues that even if Plaintiff could establish a prima facie claim of retaliation, the Agency has articulated legitimate, non-discriminatory reasons for Plaintiff's non-selection, and Plaintiff cannot demonstrate pretext.

Plaintiff filed an EEO complaint in 2005, with regard to the first time the Agency chose not to rehire him after his initial appointment. This prior complaint resulted in a dismissal in favor of the Agency. The EEOC affirmed the dismissal on appeal. Two years later, Plaintiff was again not selected for a Telephone Interviewer position for the same reason that he had been denied before: his prior conduct and performance in the job. Plaintiff has submitted no facts demonstrating that there is a causal connection between Plaintiff's 2005 EEO complaint and his 2007 nonselection. Accordingly, Plaintiff's retaliation claim has no merit.

Even if Plaintiff could establish a prima facie claim of retaliation, the Agency has

articulated legitimate, non-discriminatory reasons for Plaintiffs nonselection, and Plaintiff cannot demonstrate pretext. Because Plaintiff cannot meet his ultimate burden under the *McDonnell Douglas* shifting analysis, he cannot prevail. *McDonnell Douglas,* 411 U.S. 792.

Accordingly,

IT IS HEREBY ORDERED as follows:

(1) Defendant's motion for summary judgment (Doc. 36) is granted.

(2) This case is dismissed with prejudice.

(3) The Clerk of the Court shall enter judgment and close the file in this case.

Dated this 24th day of April, 2015.

_____
Bernardo P. Velasco
United States Magistrate Judge